B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

**PLAINTIFFS**

**DEFENDANTS**

**ATTORNEYS** (Firm Name, Address, and Telephone No.)

**ATTORNEYS** (If Known)

**PARTY** (Check One Box Only)
- ☐ Debtor
- ☐ Creditor
- ☐ Trustee
- ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Other

**PARTY** (Check One Box Only)
- ☐ Debtor
- ☐ Creditor
- ☐ Trustee
- ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Other

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11 - Recovery of money/property - § 542 turnover of property
- ☐ 12 - Recovery of money/property - § 547 preference
- ☐ 13 - Recovery of money/property - § 548 fraudulent transfer
- ☐ 14 - Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31 - Approval of sale of property of estate and of co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41 - Objection / revocation of discharge - § 727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51 - Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66 - Dischargeability - § 523(a)(1),(14),(14A) priority tax claims
- ☐ 62 - Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61 - Dischargeability - § 523(a)(5), domestic support
- ☐ 68 - Dischargeability - § 523(a)(6), willful and malicious injury
- ☐ 63 - Dischargeability - § 523(a)(8), student loan
- ☐ 64 - Dischargeability - § 523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65 - Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71 - Injunctive relief - reinstatement of stay
- ☐ 72 - Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81 - Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91 - Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01 - Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa *et.seq.*
- ☐ 02 - Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

B1040 (Page 2) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>IMAGENETIX, INC. | | BANKRUPTCY CASE NO.<br>12-16423-MM7 |
| DISTRICT IN WHICH CASE IS PENDING<br>SOUTHERN DISTRICT | DIVISIONAL OFFICE<br>SAN DIEGO | NAME OF JUDGE<br>Hon. Margaret M. Mann |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>/s/Gary B. Rudolph | | |
| DATE<br>12/07/2018 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Gary B. Rudolph, Esq., Attorney for Plaintiff, Gerald H. Davis, Chapter 7 Trustee | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

B1040

SULLIVAN HILL REZ & ENGEL
A Professional Law Corporation
 James P. Hill, SBN 90478
 Gary B. Rudolph, SBN 101921
600 B Street, Suite 1700
San Diego, California 92101
Telephone:  (619) 233-4100
Fax Number: (619) 231-4372

**Electronically Filed:  12/07/2018**

Attorneys for Plaintiff, Gerald H. Davis, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No.  12-16423-MM7 |
| IMAGENETIX, INC., | Adv. Pro. No. |
| Debtor. | Chapter 7 |
| GERALD H. DAVIS,<br>Chapter 7 Trustee, | **COMPLAINT FOR BREACH OF FIDUCIARY DUTY** |
| Plaintiff, | |
| v. | |
| WILLIAM P. SPENCER, WAYNE OPPERMAN, GEORGE GEORGAKALIS, MD, BOB DENNIS, CPA, and WILLIAM TOOMEY, | |
| Defendants. | |

Comes now Plaintiff Gerald H. Davis ("Trustee" or "Plaintiff"), the Chapter 7

Trustee of the bankruptcy estate ("Estate") of Imagenetix, Inc. ("Debtor"), and alleges

as follows:

/ / /

/ / /

# I.

## PARTIES

1.    On December 17, 2012, the superseded Chapter 11 bankruptcy case was filed.  On September 16, 2014, an order was entered confirming the debtor's Third Amended Plan of Reorganization [ECF 447].  On September 22, 2014, the reorganized Debtor filed a notice that the effective date of its Third Amended Plan of Reorganization was September 16, 2014 [ECF 460].  On November 1, 2016, the debtor filed a Motion to Convert the Chapter 11 to a Chapter 7 [ECF 567] and on December 8, 2016, an order was entered granting the motion to convert the case to a Chapter 7.  On December 8, 2016, Plaintiff, Gerald H. Davis was appointed Chapter 7 Trustee of the debtor's bankruptcy estate [ECF 585-1].  Plaintiff is the Trustee of the Debtor Imagenetix which is a corporation organized under the laws of the state of Nevada and was headquartered in San Diego, California.

2.    Defendant William P. Spencer is an individual residing in the County of San Diego, California and has filed proofs of claim nos. 60 and 62 in this bankruptcy case.  Defendant Spencer has stated that he was the President and Chief Executive Officer of the Debtor and that he served in that capacity since 1999 until he voluntarily submitted his resignation in January 2016.  He has also served as a Director of the Debtor during that time frame and as the Debtor's President and Chief Executive Officer, Plaintiff alleges on information and belief that he provided executive management and supervised the Debtor's sales, operations and contractual activities; oversaw the Debtor's marketing, customer relations and regulatory compliance efforts, as well as responsible for overseeing shareholder relations for the Debtor and had substantial knowledge of all litigation which the Debtor had been involved and oversaw and provided support essential to such litigation.

/ / /

/ / /

/ / /

3. Plaintiff alleges on information and belief that Defendant William Toomey, ("Toomey") was a Director on the Debtor's Board of Directors prior to and after March 2015. Plaintiff alleges on information and belief that Defendant Toomey resides in the County of San Diego, California.

4. Plaintiff alleges on information and belief that Defendant Wayne Opperman, ("Opperman") was a Director on the Debtor's Board of Directors subsequent to April 2015. Plaintiff alleges on information and belief that Defendant Opperman resides in the County of San Diego, California.

5. Plaintiff alleges on information and belief that Defendant George Georgakalis, ("Georgakalis") was a Director on the Debtor's Board of Directors subsequent to April 2015. Plaintiff alleges on information and belief that Defendant Georgakalis resides in the County of San Diego, California.

6. Plaintiff alleges on information and belief that Defendant Bob Dennis, CPA, ("Dennis") was a Director on the Debtor's Board of Directors subsequent to April 2015. Plaintiff alleges on information and belief that Defendant Dennis resides in the County of San Diego, California.

## II.

## JURISDICTION

7. The Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§157 and 1334 and General Order 312-E of the United States District Court, Southern District of California; and Rule 7001(1) and 7003 of the Federal Rule of Bankruptcy Procedure ("FRBP"). This adversary proceeding arises under and is related to the underlying Chapter 7 bankruptcy case of *In Re Imagentix*, *Inc.,* case no. 12-16423-MM7, which is currently pending before this Court.

8. This Court has personal jurisdiction over defendants pursuant to FRBP 7004(f). Venue is proper pursuant to 28 U.S.C. § 1409.

9.     Pursuant to FRBP 7008, Plaintiff consents to the entry of final orders or judgement by the Court.  Additionally, pursuant to LBR 7008-1, if the Court determines this proceeding is a core proceeding, Plaintiff hereby consents to the entry of final orders or judgment by the Court.

10.     This Court may hear and determine this proceeding and enter appropriate orders and judgments pursuant to 28 U.S.C. §157(b)(1) and (2).  This proceeding is a core proceeding as set forth in 28 U.S.C. §157(b)(2)(A).

### III.

### <u>OVERVIEW</u>

11.     Concerning, William Spencer, a former CEO and a former director of Imagenetix for his negligent and/or fraudulent conduct which Trustee alleges on information and belief, constitutes breaches of fiduciary duty and has continued to damage Imagenetix and cost it legal fees even now.  It was Spencer's fraudulent conduct that resulted in a judgment entered jointly and severally against him and Imagenetix in the amount of approximately $4 million (including $250,000 in punitive damages for fraud) in favor of TriPharma that precipitated the original bankruptcy filing by Imagenetix.  Plaintiff is informed and believes and thereon alleges that the wrongful conduct was the selling of certain exclusive rights to the Imagenetix intellectual property (including rights to the '892 Patent) to TriPharma and the subsequent re-selling of that same or similar property to others, including First Fruits Business Ministry.  Both are now claiming rights to the '892 Patent in claims entangling Debtor as a result of the actions of Spencer and Spencer's continuing conduct even now.  Moreover, on information and belief, Spencer's improper decision to fail to make timely payments to TriPharma under the original Chapter 11 Plan, despite having assets to do so, resulted in the ultimate conversion of this case to Chapter 7 liquidation.  Meantime Spencer and other Imagenetix officers apparently misled the investors who had made the funds available to fund the Plan by overstating Imagenetix's revenue.

## IV.

## FACTUAL BACKGROUND

12.     On April 27, 2012, TriPharma obtained a judgment in the Superior Court of the State of California for the County of San Diego in *TriPharma v. Imagenetix, Inc. and William Spencer,* case number 37-2011-001-1-44-CU-PA-CTL confirming an arbitration award in TriPharma's favor, jointly and severally against Imagenetix and Spencer in the sum of $3,934,423.31 comprised of $2,101,985.11 and compensatory damages, $250, 000 in punitive damages, $957,792.50 as reasonable attorney's fees, costs of $65,288.70 and pre-award interest of $559,357, plus pre-judgment interest of $191,356.34 and post-judgment interest at the daily rate of $1,077.92.  The judgment explicitly included an award of $250,000 in punitive damages against Mr. Spencer and Imagenetix for fraud.

13.     In the written arbitration award incorporated by the judgment it was stated that "much of Spencer's testimony lacked credibility."  It was also stated that as to TriPharma, Spencer "misrepresented his intention to sell the same weight loss product to other companies.  He purposefully did not disclose that his business model was to sell slightly tweaked versions of the product to numerous companies, including TriPharma and allow each buyer to make the same or similar clinical claims.  Likewise, he intentionally concealed from TriPharma that he sold its supposedly exclusive product to numerous companies and did not inform those companies that TriPharma held an exclusive right to market, sell and distribute that product."  The arbitrator also found that "Spencer fabricated" evidence "after the fact."  Finally, as to the fraud discussion, the arbitrator concluded: "Spencer personally directed and controlled Imagenetix and committed promissory fraud regarding all the Agreements with TriPharma.  Therefore Imagenetix and Spencer are jointly and severally liable for the fraud."

14.     Thereafter TriPharma commenced efforts to collect on its judgment which disrupted the Debtor's business.  On December 17, 2012 the Debtor filed a

Chapter 11 Petition for Relief, commencing the chapter 11 case, in order to obtain a stay of TriPharma's collection efforts and to obtain a breathing spell within which to reorganize its financial affairs.

15.    On information and belief it is alleged that while the arbitration was pending, Spencer had Imagenetix "secretly" negotiate and enter into a series of agreements with First Fruits Ministry.  The agreements purported to transfer to First Fruits Ministry the full ownership of the '892 Patent and all rights relating to the Patent (except a limited license concerning animal weight control products).  But the agreements' interpretation seemingly ignored that TriPharma had an exclusive license involving the '892 Patent which was determined not to expire until at least October 1, 2014.

16.    Upon the filing of the bankruptcy petition, First Fruits purported to terminate any rights that Imagenetix had remaining in the Patent and thereby terminate the sub-license of TriPharma.  But because of the judgment following the arbitration, United States District Court, Central District of California, in *TriPharma v. First Fruits, LLC,* case number SA-cv-12-00404-JDS (ANX), issued a temporary injunction enjoining First Fruits from the sale, distribution or advertising of any '892 Patent products until the original exclusive license agreement between TriPharma and Imagenetix expired on October 1, 2014.

17.    After the petition date, the Debtor entered into extensive and lengthy negotiations with TriPharma to attempt to reach a comprehensive resolution of their differences.  On August 29, 2013, the Debtor and TriPharma entered into a Settlement and Release Agreement which granted TriPharma a secured claim pursuant to a chapter 11 plan to be proposed by the Debtor and acknowledged the exclusive license to the '892 Patent and arguably granted an automatic renewal of that license.  The settlement agreement was approved by the Bankruptcy Court on November 4, 2013. The Debtor filed a plan which provided TriPharma with a secured claim of $3.5 million but allowed Debtor to pay less (as little as $2 million) if payments were made

timely and on schedule.  The bankruptcy court confirmed Debtor's Amended Chapter 11 Plan of Reorganization on September 15, 2014.  Spencer was President and Chief Executive Officer of the Debtor at the time of confirmation.

18.     Spencer was primarily responsible for negotiating this settlement and the terms of the Plan.  But TriPharma has asserted that the settlement and Plan granted it a perpetual license to the '892 Patent.  First Fruits claims that it owned the '892 Patent and Imagenetix had no rights which it could license to TriPharma.  This situation (created by Spencer) was not adequately disclosed to the Bankruptcy Court by Spencer (or others).  As a result, Imagenetix has been whipsawed by both TriPharma and First Fruits asserting claims concerning their rights to the '892 Patent.  This has continued through the present.

19.     Imagenetix raised cash from investors with which it essentially paid in full the obligations under the Plan except for the obligations to TriPharma.  Pursuant to section 5.2.5 of the Plan, the Debtor believed it was in a position to satisfy Tri-Pharma's allowed secured claim by paying to TriPharma an additional amount of $1.65 million within 18 months after the effective date of the Plan.

20.     An initial $100,000 payment under the Plan was due to TriPharma on December 1, 2014.  While Imagenetix had funds on hand to make that payment, it was not made – Spencer determined that he would withhold the payment (purportedly at TriPharma's request but without court approval) in violation of the terms of the Plan and putting the entire plan in jeopardy.  On December 15, TriPharma sent Debtor an e-mail asserting that Imagenetix was in default under the Plan.  Thereafter, on December 16, 2014, Debtor wired the money to the Walton Trust Company as required by the Plan.  According to TriPharma it was too late.  On December 31, 2014, TriPharma filed a Notice of Default by the Debtor on post-plan confirmation payment due to TriPharma, LLC [ECF 489].  TriPharma specifically reserved all rights to foreclose on the assets of the Debtor.  TriPharma sent to Proprietary Nutritionals, Inc. ("PNI") notice of the default and demanded that PNI pay to

TriPharma any and all accruing payments – a significant source of Imagenetix's revenue.  While a forbearance agreement was entered between TriPharma and Imagenetix in March of 2015 by which TriPharma agreed to forebear from foreclosing and extending plan payments due on March 1, 2015 and June 1, 2015 until June 10, 2015, PNI continued to make payments to Imagenetix.  But, no progress was made toward a resolution.  Imagenetix, under the direction of Spencer, failed to make plan payments before expiration of the forbearance on June 10, 2015, with no new forbearance agreement in place.

21.    On or about August 13, 2015, TriPharma sent and Imagenetix received a Notice of Default of Settlement and Release Agreement as a result of its failure to make March 1 and June 1, 2015 payments.  An acceleration provision was included. PNI received a Notice of Default under the Plan and was directed to make all future payments to DHF (assignee of TriPharma).  PNI responded by stating that it would not make payments to Imagenetix unless and until the issue of the default under the settlement agreement was resolved and the Notice of Default was withdrawn. Thereafter PNI withheld payments.

22.    PNI withheld approximately $713,000 in payments which would have been made to Imagenetix (the payments were made to the chapter 7 trustee in early 2017).  Based on its inability to resolve the TriPharma default, Imagenetix converted the case to Chapter 7 liquidation.

**FIRST CLAIM FOR RELIEF**

**(Breach of Fiduciary Duty)**

23.    Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 22, as though fully set forth herein.

24.    By reason of his position as President, CEO, Director, and/or other fiduciary of Imagenetix, and because of his ability to control the business, litigation, and corporate affairs of Debtor, Spencer owed Debtor and its stakeholders fiduciary obligations of good faith, loyalty, and candor, and was required to use his utmost

ability to control and manage Debtor in a fair, just, honest, non-negligent and equitable manner.  Spencer was required to act in furtherance of the best interests of Debtor and its stakeholders so as to benefit all stakeholders.  He owed Debtor and its stakeholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Debtor and the highest obligations of fair dealing.

25.    Because of his position of control and authority as both a Director and the CEO/President, Spencer was able to and did directly and/or indirectly exercise control over the negligent and wrongful acts complained of herein.

26.    Among the negligent and wrongful conduct and breaches of fiduciary duty which on information and belief the trustee alleges against Spencer are the following:

- Engaging in conduct causing the judgment to be entered against Imagenetix in favor of TriPharma in the amount of $3,934,423.31 which included punitive damages.

- Selling the rights to the '892 Patent to First Fruits while the arbitration was pending and in the face of an exclusive license to market that patent which had been granted to TriPharma.

- Entering into a settlement agreement with TriPharma providing for TriPharma to have a continued exclusive license to market the '892 Patent without dealing with the First Fruits acquisition of the Patent.

- Procuring as part of the sale of the patent to First Fruits an interest in First Fruits (30%) on behalf of Imagenetix, but later directing First Fruits to dissipate (reconvey) some portion of that Imagenetix asset to individuals associated with Imagenetix.  The extent of this defalcation is not yet fully understood.

- Engaging in discussions and allowing Imagenetix to enter into a further "Amended Settlement Agreement" which had Imagenetix "confirm and acknowledge that on or about November 4, 2016,

TriPharma's exclusive right to the '892 Patent, the continued validity of Imagenetix/TriPharma settlement agreement, and that said rights presently exist and are hereby transferred to TriPharma, and not withstanding its ownership of the Patent which it acquired from Imagenetix, the First Fruits Beverage Company, First Fruits Business Ministry and Roger Catarino ("the First Fruits Parties") held no license or rights to market, sell or distribute any products covered by the Patent '892 and the First Fruits Parties purchase the Patent in full knowledge of and subject to the rights of TriPharma." This was done because Spencer did not fully disclose the nature of the relationship with First Fruits nor the litigation between First Fruits and Imagenetix. That settlement agreement was ultimately abandoned and not approved by the court, but its existence has compounded the litigation entangling Imagenetix.

- Notwithstanding the numerous communications and agreements with TriPharma, on October 26, 2018 Mr. Spencer executed a "Declaration" apparently repudiating the "Further Amendment to Amended and Restated Exclusive Marketing and Supply Agreement" which was part "Settlement and Release Agreement" which was part of the Plan of Reorganization of Imagenetix filed with the court on 8/29/14 despite the fact that this further Amendment is explicitly referenced and summarized in the Settlement and Release Agreement. See, ECF 430, pgs. 81-82 of 144 filed 8/29/14. This has had the effect of putting Imagenetix in the cross hairs between TriPharma and First Fruits again even though Imagenetix asserts it has no rights to the '892 Patent and even raises issues as to the confirmation of the Plan.

- It has been alleged that Spencer has admitted/asserted that he continues to infringe upon IP assets of the Debtor.

- It has been alleged that Spencer has testified that he continues to sell product based on the '892 Patent which it is alleged violates the 2013 Settlement Agreement and opens Imagenetix to additional claims.

- It has been asserted by some investors that they were misled by the financial statements of Imagenetix and that the money raised to finance the chapter 11 plan was predicated *inter alia* on a phony claim of $1.3 million in sales which never occurred.

27.   As a result of these and other defalcations, Spencer has caused significant damages to the Debtor, including requiring it to deal with numerous additional proofs of claim, being named in litigation and adversary proceedings and incurring costs in defending and dealing with these proceedings in an amount in excess of several hundred thousand dollars, to be proven at trial.

28.   Based on the fraudulent, malicious and oppressive nature of defendant's conduct described above and with defendant's knowledge that said conduct would damage plaintiff, plaintiff is entitled to an award of punitive damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

### (Breach of Fiduciary Duty Against Defendants Spencer, Toomey, Opperman, Georgakalis and Dennis)

29.   Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 28, as though fully set forth herein.

30.   By reason of defendants Spencer, Toomey, Opperman, Georgakalis and Dennis (collectively "Board Defendants") position as Directors, and/or other fiduciary of Imagenetix, and because of their ability to control the business, litigation, and corporate affairs of Debtor, they owed Debtor and its stakeholders fiduciary obligations of good faith, loyalty, and candor, and was required to use his utmost ability to control and manage Debtor in a fair, just, honest, non-negligent and equitable manner.  Board Defendants were required to act in furtherance of the best

interests of Debtor and its stakeholders so as to benefit all stakeholders.  They owed Debtor and its stakeholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Debtor and the highest obligations of fair dealing.

31.    Because of their position of control and authority as Directors, Board Defendants were able to and did directly and/or indirectly exercise control over the negligent and wrongful acts complained of herein.

32.    Board Defendants had the responsibility to protect the interest of the company and its shareholders.  On information and belief Plaintiff alleges that these Board Defendants knew that the payment default to TriPharma would jeopardize the company and the interest of its shareholders.  These Board Defendants, on information and belief, were specifically requested to take action to adjust the payment defaults. However, on information and belief notwithstanding the notice of the jeopardy posed by the plan default the Board Defendants nonetheless failed to cure the default.

33.    On further information and belief, the Board Defendants failed to provide shareholders with minutes of board meetings when requested in further violation of their duties.

34.    As a result of these and other defalcations, the Board Defendants have caused significant damages to the debtor including but not limited to being named in litigation in adversary proceedings and incurring costs in defending and dealing with these proceedings in an amount in excess of several hundred thousand dollars to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Imagenetix prays for relief as follows:

## **FIRST CLAIM FOR RELIEF**

1.    Compensatory damages in an amount subject to proof at the time of trial;

2.    Punitive damages in an amount subject to proof at the time of trial;

3.    Attorney's fees herein incurred;

1    4.    Costs of suit herein incurred; and

2    5.    For such other and further relief as the Court may deem proper.

3                    **SECOND CLAIM FOR RELIEF**

4    1.    Compensatory damages in an amount subject to proof at the time of trial;

5    2.    Attorney's fees herein incurred;

6    3.    Costs of suit herein incurred; and

7    4.    For such other and further relief as the Court may deem proper.

8

9    Dated:    December 7, 2018          SULLIVAN HILL REZ & ENGEL
                                          A Professional Law Corporation

10

11                                        By:    _____
                                                 Gary B. Rudolph
12                                               Attorneys for Plaintiff,
                                                 Gerald H. Davis, Chapter 7 Trustee

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

400484-v5